UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Action No.: 05-30058-MAP |
| | ) |
| CANDACE MATEO | ) |

## MEMORANDUM IN SUPPORT OF MOTION FOR DOWNWARD DEPARTURE

### I.  INTRODUCTION

On May 1, 2006, Candace Mateo pled guilty to 21 U.S.C. § 846—"Conspiracy to Distribute Cocaine Base"—and 21 U.S.C. § 841 (a) (1)—"Possession with Intent to Distribute Cocaine Base." Pursuant to 21 U.S.C. § 841 (a) (1) and § 846, the term of imprisonment is a five (5) year minimum mandatory (60 months) on each count. A statutory minimum mandatory obligates this court to sentence Ms. Mateo to at least the statutory minimum term of imprisonment unless she meets the requirements of U.S.S.G. § 5C1.2—i.e. the "safety valve" provision of the U.S.S.G. If the Defendant meets the "safety valve" provision of the U.S.S.G. then the court may disregard the statutory minimum mandatory at sentencing and impose a sentencing range of imprisonment between forty-one (41) and fifty-one (51) months as calculated below in Section III. See U.S.S.G. § 5C1.2.

If this court finds that the Defendant is not eligible for the "safety valve" provision of the U.S.S.G.—and thus the statutory minimum sentence applies—then she should receive no more than the minimum mandatory sentence of sixty (60) months, or five (5) years. In calculating her sentencing range under the U.S.S.G., the Defendant maintains that her "Total Offense Level" is, at most, level twenty-four (24) with a "Criminal History Category" of I. This calculation provides for a guideline range of imprisonment of fifty-one (51) to sixty-three (63) months. The

1

Defendant argues that she should be afforded a downward departure on her guideline calculation
for the following areas: (1) her Criminal History Category over represents the seriousness of her
criminal history and should be reduced to Category I; (2) her minor participation in the instant
offense; (3) her family ties and responsibilities; and (4) mitigating circumstances not adequately
take into account by the U.S.S.G.

As discussed below in Section II, the Defendant should receive a sentence of sixty (60)
months of imprisonment as her guideline range (of fifty-one (51) to sixty-three (63) months) falls
below the statutory minimum mandatory term of imprisonment. The Defendant maintains that
any sentence above the minimum mandatory sixty (60) months would be excessive.

Alternatively, as discussed below in Section III, it is the Defendant's position that she is
eligible for the "safety valve" provision of the U.S.S.G. because she meets the criteria under §
5C1.2. Under § 5C1.2, the following criteria must be met before a sentence will be imposed
without regard to the statutory minimum mandatory sentence: (1) the defendant does not have
more than 1 criminal history point; (2) the defendant did not use violence or credible threats of
violation or possess a firearm or other dangerous weapon; (3) the offense did not result in death
or serious bodily injury to any person; (4) the defendant was not the organizer, leader, manager,
or supervisor of others in the offense; and (5) not later than the time of sentencing the defendant
has truthfully provided the Government all information and evidence the defendant has
concerning the offense. The Defendant maintains that she meets all of the foregoing criteria and
should be considered "safety valve" eligible in this matter. As such, she proposes a guideline
range of imprisonment between forty-one (41) and fifty-one (51) months as calculated below in
Section III. See U.S.S.G. § 5C1.2.

2

## II.    PROPOSED GUIDELINE RANGE IF NOT "SAFETY VALVE" ELIGIBLE

Should this court determine that Ms. Mateo is not eligible for the "safety valve" provision of the U.S.S.G. then Ms. Mateo asserts that, pursuant to the sentencing guidelines, her sentence should be the minimum mandatory term of sixty (60) months.  Ms. Mateo maintains that due to certain downward departures she falls within a guideline range of imprisonment of fifty-one (51) to sixty-three (63) months.  As this guideline range falls below the statutory minimum mandatory term of sixty (60) months Ms. Mateo requests that this court impose the minimum term of imprisonment (60 months) as anything greater would be excessive.  The Defendant's proposed calculation and total offense level is as follows:

| | | |
|---|---|---|
| **(1)** | **Base Offense Level:** | **30** |
| | **Adjustment for Role in Offense/Family Ties and** | |
| | **Responsibilities/Mitigating Circumstances** | **-3** |
| | **Adjustment for Acceptance of Responsibility:** | **-3** |
| | | |
| | **Total Offense Level:** | **24** |
| **(2)** | **Criminal History Category** | **I** |

The PSR maintains that Ms. Mateo's guideline range of imprisonment is seventy-eight (78) to eighty-seven (87) months.  **See Presentence Report ¶ 90.**  The PSR's proposed method of calculation and total offense level is as follows:

| | | |
|---|---|---|
| **(1)** | **Base Offense Level:** | **30** |
| | **Adjustment for Acceptance of Responsibility:** | **-3** |
| | | |
| | **Total Offense Level:** | **27** |
| **(2)** | **Criminal History Category** | **II** |

In calculating the two (2) above proposed ranges, it is apparent that the difference in calculation rests upon a determination of whether the Defendant is eligible for a downward

departure in her Criminal History Category and her Offense Level Category.[1]  Ms. Mateo

requests that this court reduce her Criminal History Category to a Category I as her prior record

over represents the seriousness of her criminal history and to give her a three (3) level departure

for her "minor" participation in the concerted activity, her family ties and responsibilities, and

for the mitigating circumstances in this matter.[2]

## A.    The Defendant's Prior Record Over represents the Seriousness of the Defendant's Criminal History

If the court determines that Ms. Mateo is not "safety valve" eligible, an examination Ms.

Mateo's criminal history demonstrates that her prior record over represents the seriousness of her

criminal history and thus her Criminal History Category should be adjusted from Category II to

Category I.  In United States v. Lacy, 99 F. Supp. 2d 108, 119 (D. Mass. 2000), the court held

that where a defendant's record is largely non-violent and relatively minor offenses the court is

permitted to adjust the Criminal History Category to reflect the seriousness of the defendant's

criminal history.  Id. at 119 (allowing downward departure where defendant had one (1) violent

offense on her record and numerous offenses for possession and possession with intent to

distribute crack).  In this matter, Ms. Mateo has no violence on her record and her prior

convictions were for relatively minor offenses.

As you can see from the Defendant's prior record, her cases in Commonwealth of

Massachusetts district courts involve some of the most minor criminal offenses.  In fact, some of

---

[1] It is agreed that, pursuant to § 2D1.1(a)(3), Ms. Mateo's base offense level is 30.  This is based upon Ms. Mateo's plea to distributing more than 35 grams of cocaine base but less than 50 grams.  The Drug Quantity Table of § 2D1.1(c) provides that level 30 is the appropriate base offense level in this matter.  Further, pursuant to Ms. Mateo's acceptance of responsibility in a timely fashion, it is agreed that she be afforded the full 3 level reduction under § 3E1.1.  Thus, the only deviation in this calculation is the Defendant's assertion that she should receive further adjustments due to her role in the offense.

[2] Further, it should be noted that Ms. Mateo might have received some assistance from the government through a § 5K1 motion being filed, but, as the Presentence Report indicates, Ms. Mateo did not cooperate with the government because of the fear of physical harm to her and her family.  Presentence Report ¶61.  Not only did Ms. Mateo and her sister experience threats of physical harm and violence, but in a related case the defendant was hospitalized after unfounded rumors of cooperation began to spread.

4

these offenses (motor vehicle offenses) are now treated civilly, with no criminal penalties. Efforts where made to withdraw some of these particular pleas due to the fact that Ms. Mateo accepted responsibility for the shoplifting offenses in an effort to assist her mother—a co-defendant in these matters. Unfortunately, Ms. Mateo's mother has an extremely lengthy criminal record for theft related offenses. Although Candace was with her mother during these particular offenses she was not directly involved in the shoplifting and, as you can see from the enclosed affidavit from Ms. Mateo's mother, Ms. Mateo was making an effort to protect her mother in these cases. **See Exhibit A.**

Additionally, the assault and battery case that she accepted responsibility for was with the father of her child—Robert Jessamy. Again, although she did accept responsibility for this case, this was not a situation where Ms. Mateo was the aggressor. Instead, she was involved in a mutual combative situation with her boyfriend who was the original aggressor. Mr. Jessamy received no medical treatment as a result of this incident and based upon a great deal of confusion and stress, Ms. Mateo agreed to accept responsibility for this offense rather than assert her right of self-defense at trial. **But for the conviction on a shoplifting charge and a continuation without a finding on the assault and batter charge there would be no question that her criminal history would make her "safety valve" eligible.**

Hence, in light of the minor offenses and unusual backdrop of these offenses Ms. Mateo asserts that her prior record overstates the seriousness of her criminal history. As such, Ms. Mateo respectfully requests that the court adjust her Criminal History Category from Category II to a Category I.

**B.     Pursuant to U.S.S.G. § 3B1.2, Ms. Mateo's participation in the concerted activity was minor and thus she should be afforded a downward departure in her Offense Level.**

Under U.S.S.G. §3B1.2, a defendant's offense level may be decreased as a result of his role in the concerted activity which makes up the basis for the offense. Specifically, §3B1.2 allows for a decrease if the defendant's participation was "minor", "minimal", or somewhere in between the two. U.S.S.G. §3B1.2. The First Circuit has stated that, "[t]o qualify as a minimal participant, a defendant must prove that he is among the least culpable of those involved in the criminal activity. In our view, this entails proof that he is substantially less culpable than his cohorts in the actual offense and that he is substantially less culpable than the vast majority of those taking part in similar crimes." United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004). See U.S.S.G. § 3B1.2, cmt. (nn.3(A), 4, 5). See also United States v. Kerr, 13 F.3d 203, 206 (7th Cir.1993) (refusing reduction for minimal participation where defendant did not prove that she was substantially less culpable than the average participant in similar crimes); United States v. De La Cruz, 996 F.2d 1307, 1314 (1st Cir.1993) (giving as examples of a minimal participant "someone who played no other role in a very large smuggling operation than to offload part of a single marijuana shipment" or someone who "was recruited as a courier for a single smuggling operation involving a small amount of drugs") (quoting U.S.S.G. § 3B1.2 cmt. (n.2)). "In short, a defendant must be a plainly peripheral player to justify his classification as a minimal participant." Santos, 357 F.3d at 142. A "minor" participant is a defendant who is less culpable than most other participants, but whose role could not be described as minimal. U.S.S.G. § 3B1.2, application notes 5.

The facts in this case show that Michael Preston, not Ms. Mateo, was the "engineer" behind orchestrating and carrying out the instant offense. **See Presentence Report ¶ 11.**

6

Although Ms. Mateo was present and participated briefly, she is without a doubt the less culpable of the two (2) defendants as she was "a plainly peripheral player" in this matter. Santos, 357 F.3d at 142.

As the Presentence Report indicates, it was Ms. Preston who initiated contact and had all conversations with the Confidential Witness (CW) regarding the purchase of crack cocaine in this matter. **See Presentence Report ¶¶ 11-12.** It was Ms. Preston who had conversations with the CW about the price, quantity, and type of narcotics. **See Presentence Report ¶¶ 11-12.** It was Ms. Preston who discussed the drug transaction with the CW and it was Ms. Preston who took the money from the CW for the drugs. **See Presentence Report ¶ 13.** Ms. Mateo's actions were limited to delivering the cocaine to Ms. Preston so that he could sell it to the CW. **See Presentence Report ¶¶ 12-13.**

This conduct, although culpable, is clearly less culpable than Ms. Preston's conduct and should receive the appropriate reduction under U.S.S.G. §3B1.2 which reflects her participation in this incident. This participation was "minor" and, pursuant to U.S.S.G. §3B1.2, she should be afforded a decrease in offense level.

## C. Pursuant to U.S.S.G. § 5H1.6, Ms. Mateo should be granted a downward departure in her Offense Level due to her family ties and responsibilities.

The First Circuit allows downward departure based on familial relationships when the circumstances are "unusual or other than ordinary." United States v. Scalmo, 997 F.2d 970, 973 (1st Cir. 1993) (noting that the presence of a live in boyfriend was so vital to the emotional well being of a child in the house that downward departure was warranted). In determining whether a departure is warranted under "family ties and responsibilities" the court can consider numerous factors, including: (1) the seriousness of the offense; (2) involvement by other family members in the offense; and (3) the dangers to other family members of the Defendant as a result of the

7

offense. See U.S.S.G. §5H1.6. Further, when a departure under this section is based upon a "loss of caretaking or financial support" a court must consider these additional factors: (1) whether serving the applicable sentence will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family; (2) whether the loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant; (3) whether the loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available; and (4) whether the departure will address the loss of caretaking or financial support. See U.S.S.G. §5H1.6.

In the following matter, Ms. Mateo is the sole caretaker of her only child, Nashany Jessamy (age 5). **See Presentence Report ¶ 56.** Nashany's father, Robert Jessamy, is currently serving a two (2) years sentence in the Massachusetts Correction Institution at Shirley and is not able to provide for his daughter. **See Presentence Report ¶ 56.** As such Ms. Mateo is the sole provider—emotionally, mentally, and financially—for Nashany at this time.

Although Nasahny will have extended family to care for her while Ms. Mateo serves her sentence, this will not compensate for the love, affection, care, protection, and support that Ms. Mateo provides to Nashany on a daily basis. Ms. Mateo's duties as a mother have never been neglected and her absence from Nashany's life—however long—will have a direct, substantial, and harmful affect on Nashany. Such an affect can be curtailed by granting a downward departure to Ms. Mateo under U.S.S.G. §5H1.6.

Pursuant to factors listed in U.S.S.G. §5H1.6, Ms. Mateo respectfully requests that this court depart downward due to the aforementioned facts and circumstances. Ms. Mateo's

8

extended absence from Nashany could cause her great difficulty in her development as a young child and an appropriate departure would be warranted and just.

**D.    Mitigating circumstances exist which have not been adequately taken into account by the U.S.S.G. and thus justify a downward departure in her Offense Level under § 5K2.0.**

The Supreme Court, in Koon v. United States, 518 U.S. 81(1996), opened the door for downward departure from the United States Sentencing Guidelines. The Koon Court emphasized allowing sentencing judges to weigh the facts and circumstances in each case and to mitigate or magnify the sentence as those facts and circumstances permit. 518 U.S. at 112. The Court noted that the Sentencing Guidelines allow the sentencing court to take into account individual circumstances that are aggravating or mitigating, not considered by the Sentencing Commission when formulating the guidelines. 18 U.S.C. §3553(b); Id. at 92. The Supreme Court recognizes that the District Courts must weigh these facts and circumstances to assess whether a particular case falls within the heartland of the applicable guidelines. United States v. Williams, 78 F. Supp. 2d 189 (S.D. N.Y. 1999); U.S.S.G. §4A1.3 (holding that the sentencing court may conclude that the defendant's criminal history was significantly less serious than that of most defendant's in the same criminal history category). A court may depart from the guidelines if it finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into account by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. U.S.S.G. § 5K2.0 (citing 18 U.S.C § 3553(b)) (1998). The Sentencing Commission has provided guidance in making departure decisions by listing certain factors that are "forbidden" bases for departure, "discouraged" bases for departure, and "encouraged" bases for departure. Koon v. United States, 518 U.S. 81, 93-95 (1996). The Supreme Court has adopted the following test for determining whether to depart: (1)

9

What factors of the case make it special or unusual?; (2) Has the Commission forbidden departures based on those factors?; (3) If not, has the Commission encouraged departures based on those factors?; and (4) If not, has the Commission discouraged departures based on those factors? Id. at 95.

The Koon Court emphasized allowing sentencing judges to weigh the facts and circumstances in each case and to mitigate or magnify the sentence as those facts and circumstances permit. 518 U.S. at 112. The Koon Court noted that the U.S.S.G. provides the courts with a set of typical cases that embody the conduct that each guideline describes. Id. See also, United States v. Rivera, 994 F.2d 942, 947 (1993). A case that falls outside of the "heartland" case described by the Guidelines, due to its unusual features, is a candidate for departure. Id. The Guidelines advise the sentencing courts of what factors make a case atypical and take it out of the considered "heartland." United States v. Pereira, 272 F.3d 76 (1ˢᵗ Cir. 2001) (noting a defendant's irreplaceable care of a family member is a factor that takes a case out of the Sentencing Guidelines' heartland). If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland. Koon, 518 U.S. at 95-96.

Further, Congress has deferred to the Commission the role of deciding what constitutes a sufficient sentencing range in the typical case, consistent with these purposes. But that range contemplates only the typical cases, ones that fall within the so-called "heartland." See U.S.S.G. Manual Ch. 1 Pt. A at 6 (1998). If the circumstances of the case reveal that the purposes of sentencing have been fully or partially fulfilled prior to the imposition of sentence, a sentence within the range set forth by the guidelines may be "greater than necessary" to satisfy those purposes. 18 U.S.C. § 3553(a).

While taking into consideration her family ties and responsibilities, Ms. Mateo draws this courts attention to her difficult childhood and the obstacles that she has been presented with during her life. **See Presentence Report ¶¶ 51-67.** Many factors contributed to Ms. Mateo's current situation, including but not limited to, her parents' history of drug abuse. **See Presentence Report ¶¶ 51-67.**

Such a difficult childhood deeply affected Ms. Mateo and her outlook on the world. Specifically, Ms. Mateo was forced to "grow up" fast as she was legally emancipated at age twelve (12). **See Presentence Report ¶ 65.** Ms. Mateo's mother was constantly in and out of jail and did not set a good example for Ms. Mateo to live by. **See Presentence Report ¶ 66.** In light of this, Ms. Mateo has raised her daughter with an eye towards providing her with a stable environment in which she can grow and thrive as a young girl should, without some of the harsh realities that Ms. Mateo faced in her life. In viewing the totality of the circumstances, Ms. Mateo should be afforded a downward departure as the above-mentioned situation takes this matter outside the "heartland" for which the guidelines allow downward departures.

**E.    Calculation of Sentence if <u>Not</u> "Safety Valve" Eligible**

Ms. Mateo recommends that, if she is not "safety valve" eligible, this court grant her the

above-mentioned downward departures.  The Defendant's proposed calculation of her Offense

Level and Criminal History Category is as follows:

| (1) | **Base Offense Level:** | **30** |
|---|---|---|
| | **Adjustment for Role in Offense/Family Ties and** | |
| | **Responsibilities/Mitigating Circumstances** | **-3** |
| | <u>**Adjustment for Acceptance of Responsibility:**</u> | <u>**-3**</u> |
| | **Total Offense Level:** | **24** |
| (2) | **Criminal History Category** | **I** |

If granted, Ms. Mateo maintains that this falls within a guideline range of imprisonment

of *fifty-one (51) to sixty-three (63) months*.  As this guideline range falls below the statutory

minimum mandatory term of sixty (60) months (which she faces as a result of a conviction under

21 U.S.C. § 841) Ms. Mateo requests that this court impose the minimum term of imprisonment

(60 months) as anything greater would be excessive.

**III.    PROPOSED GUIDELINE RANGE IF "SAFETY VALVE" PROVISION OF
U.S.S.G. § 5C1.2 APPLIES**

The Defendant maintains that she has met all of the criteria under § 5C1.2 to be eligible

for the "safety valve" provision and thus render the statutory minimum sentence in this matter

irrelevant.  The area of contention between the Defendant and the PSR surrounds the

Defendant's eligibility under § 5C1.2 pertaining to the first element of the "safety valve"

provision—that the defendant does not have more than one (1) Criminal History point—as

discussed above in Section I.

**A.    The Defendant's Criminal History Category is I as she does not have
more than one (1) criminal history point.**

12

The PSR states that Ms. Mateo has at least two (2) criminal history points and is thus in Criminal History Category II rendering her ineligible for the "safety valve" provision. The PSR bases this calculation on Ms. Mateo's two (2) prior offenses in the state court: (1) assault and battery; and (2) shoplifting.[3]

Ms. Mateo asserts that these prior offenses should not count when calculating her criminal history points for the following reasons: (1) the disposition on the assault and battery offense was a Continuation without a Finding and was ultimately dismissed; and (2) the shoplifting charge is similar to the offense of an "insufficient funds check" which is excluded from calculation under U.S.S.G. § 4A1.2(c)(1). See United States v. Lopez-Pastrana, 244 F.3d 1025 (9th Cir. 2001) (holding that shoplifting is "similar to" passing an insufficient funds check, which is listed in § 4A1.2(c)(1) as not counting in criminal history).

By not counting these offenses when calculating Ms. Mateo's criminal history points, her Criminal History Category is category I. As such, Ms Mateo is eligible for the "safety valve" provision of the U.S.S.G. and this court may choose to disregard the statutory minimum mandatory sixty (60) month term of imprisonment as provided for in 21 U.S.C. § 841 (a) (1) and § 846.

**B.     Calculation of Sentence if "Safety Valve" Eligible**

Ms. Mateo asserts that, if she is found to be "safety valve" eligible, then the following sentencing calculation should apply in her matter:

**(1)     Base Offense Level:                                    30**
**Specific Offense Characteristics—**
**     Adjustment for "Safety Valve" Eligibility:       -2**

---

[3] It should be noted that the Government makes reference to another offense that they maintain would count against Ms. Mateo if it is determined that it resulted in a conviction. **See Presentence Report ¶ 41.** According to the Presentence Report this offense is "Counterfeit Motor Vehicle Sticker." **See Presentence Report ¶ 41.** The Defendant maintains that this offense is "similar to" the offenses listed in § 4A1.2(c) and thus should likewise be excluded from the calculation of her Criminal History points.

|     | **Adjustment for Role in Offense/Family Ties and** |      |
| --- | --- | --- |
|     | **Responsibilities/Mitigating Circumstances** | **-3** |
|     | **Adjustment for Acceptance of Responsibility:** | **-3** |
|     | **Total Offense Level:** | **22** |
| **(2)** | **Criminal History Category** | **I** |

As discussed in Section II, Ms. Mateo should receive her adjustments for her role in the
offense, her family ties and responsibilities, and the mitigating circumstances that are not
adequately taken into account when calculating her sentencing range. Further, Ms. Mateo
maintains that she should receive an additional two (2) level reduction due to her eligibility for
the "safety valve" provision. See U.S.S.G. § 2D1.1(b)(7). This would place her Total Offense
Level calculation at level twenty-two (22). Coupled with the Category I Criminal History that
she would now be in, Ms. Mateo's sentencing range would be forty-one (41) to fifty-one (51)
months.

## IV.    CONCLUSION

For the foregoing reasons, Ms. Mateo respectfully requests that this Honorable Court—if
she is not found to be "safety valve" eligible—depart downward from the PSR's proposed
offense level of twenty-seven (27) and impose an offense level of twenty-four (24) due to Ms.
Mateo's minor participation, family ties and responsibilities, and mitigating circumstances.
Further, the Defendant requests a departure in her Criminal History Category from Category II to
Category I. The Defendant maintains that her current status in Category II does not accurately
reflect the seriousness of her criminal history. As such the Defendant proposes the following
calculation:

| **(1)** | **Base Offense Level:** | **30** |
| --- | --- | --- |
|     | **Adjustment for Role in Offense/Family Ties and** |      |
|     | **Responsibilities/Mitigating Circumstances** | **-3** |
|     | **Adjustment for Acceptance of Responsibility:** | **-3** |

14

**Total Offense Level:**                                    **24**

**(2)    Criminal History Category**                        **I**

This calculation would place Ms. Mateo within a guideline range of imprisonment of

fifty-one (51) to sixty-three (63) months. As this range falls below the statutory minimum

mandatory term of imprisonment of sixty (60) months, the Defendant requests that this court

impose a sentence of sixty (60) months as anything above would be excessive due to Ms.

Mateo's sentencing range.

Alternatively, Ms. Mateo respectfully requests that this Honorable Court rule that Ms.

Mateo is eligible for the "safety valve" provision of U.S.S.G. § 5C1.2 and thus disregard the

minimum mandatory term of imprisonment under 21 U.S.C. § 841 (a) (1) and § 846. The

Defendant's calculation, if the "safety valve" provision applies, is as follows:

**(1)    Base Offense Level:**                              **30**
       **Specific Offense Characteristics—**
         **Adjustment for "Safety Valve" Eligibility:**     **-2**
       **Adjustment for Role in Offense/Family Ties and**
         **Responsibilities/Mitigating Circumstances**      **-3**
       **Adjustment for Acceptance of Responsibility:**    **-3**

       **Total Offense Level:**                             **22**

**(2)    Criminal History Category**                        **I**

Coupled with a Category I Criminal History, this would place Ms. Mateo in a sentencing range

of forty-one (41) to fifty-one (51) months. This calculation is based upon the aforementioned

factors in Sections II and III which includes an additional two (2) level reduction for being

"safety valve" eligible.

As the court would not be bound by the sixty (60) month minimum mandatory sentence it could impose the proposed sentencing range for Ms. Mateo.  Ms. Mateo respectfully requests that such a sentencing range be imposed.

Respectfully Submitted,
Candace Mateo
By Her Attorney:

Joseph D. Bernard
The Law Offices of Joseph D. Bernard, P.C.
73 State Street, Suite 301
Springfield, MA 01103
(413) 731-9995
(413) 730-6647 fax
BBO#: 557986

Date:  July 19, 2006

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS
The Department of the Trial Court

BERKSHIRE, ss.                          SOUTHERN BERKSHIRE DISTRICT COURT
                                        DOCKET NO.: 9729 CR 1050

COMMONWEALTH OF MASSACHUSETTS           )
                                        )
v.                                      )
                                        )
CANDACE MATEO                           )

## AFFIDAVIT BY DJUANA DEWITT

Under oath I depose and state:

1.    I, Djuana Dewitt, am an individual residing in Pittsfield, Massachusetts. I am the mother,
      and a co-defendant, of the defendant in this matter, Candace Mateo.

2.    I was present on or about November 20, 1997 when the alleged conduct—which makes
      up the basis of this conviction—took place.

3.    On or about this date, I was shopping at the "outlet malls" in Lee, Massachusetts with my
      daughter, Candace Mateo, and my husband, Kevin Dewitt. On this date, I proceeded to
      "shoplift" multiple items from various stores in the "outlet mall." I then proceeded to
      place the items in our vehicle when Kevin, Candace, and I were arrested.

4.    I had shoplifted from approximately five (5) stores on this date and Candace had no
      knowledge that I was engaging in this activity as I concealed my actions from her.
      However, Candace was charged with the instant offense as a result of my conduct.

5.    On or about this date, I had previous convictions for various charges and was facing
      incarceration as a result of this new charge. I pressured and influenced Candace, who
      was seventeen (17) at the time of her arrest, to claim responsibility for these items so that
      I may attempt to avoid criminal prosecution and avoid a possible jail sentence.

6.    Specifically, I informed Candace of the possible jail sentence I was facing if convicted of
      these charges. I told her that if she pled guilty and took responsibility of these items the
      Commonwealth would drop the charges against me and I would not face the possibility of
      going to jail. I further informed her that since her record was clean she would receive a
      light punishment in comparison to the punishment I was facing. I kept reminding
      Candace that if I was convicted I would go to jail.

7.    My intention in telling Candace this was to pressure her into pleading guilty and taking
      responsibility for the items that I stole so that I could attempt to escape prosecution and
      possible jail time.

8.    On or about December 11, 1997, Candace changed her plea in this matter at my direction and took responsibility for the items.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

Date:

Djuana Dewitt

COMMONWEALTH OF MASSACHUSETTS
The Department of the Trial Court

BERKSHIRE, ss.                               PITTSFIELD DISTRICT COURT
                                             DOCKET NO.: 0427 CR 0803

COMMONWEALTH OF MASSACHUSETTS          )
                                       )
v.                                     )
                                       )
CANDACE MATEO                          )

## AFFIDAVIT BY DJUANA DEWITT

Under oath I depose and state:

1.    I, Djuana Dewitt, am an individual residing in Pittsfield, Massachusetts. I am the mother
      of the defendant in this matter, Candace Mateo. I was present on or about May 6, 2004
      when the alleged conduct—which makes up the basis of this conviction—took place.

2.    On or about the aforementioned date, I was shopping at the Wal-Mart in Pittsfield with
      Candace Mateo, my daughter, and Ruthie Duboise, my mother.

3.    While at Wal-Mart, I began to take various items throughout the store and place them in
      my black pocketbook with the intention of taking them without paying—i.e. shoplift.
      Candace had no knowledge of my actions as I concealed them from her. When we
      proceeded to "check-out" and pay for some of the items I was stopped by law
      enforcement officials and these items were found in my pocketbook. Both Candace and I
      were charged with shoplifting these items.

4.    At no time did Candace Mateo "shoplift" or have knowledge that I was "shoplifting" on
      this date. I concealed my actions from her and she had no knowledge that I was
      attempting to commit this crime.

5.    On or about this date, I had previous convictions for various charges and was facing
      incarceration as a result of this new charge. I pressured and influenced Candace to claim
      responsibility for these items so that I may attempt to avoid criminal prosecution and
      avoid a possible jail sentence.

6.    Specifically, I informed Candace of the possible jail sentence I was facing if convicted of
      these charges. I told her that if she pled guilty and took responsibility of these items the
      Commonwealth would drop the charges against me and I would not face the possibility of
      going to jail. I further informed her that since her record was clean she would receive a
      light punishment in comparison to the punishment I was facing. I kept reminding
      Candace that if I was convicted I would go to jail.

7.      My intention in telling Candace this was to pressure her into pleading guilty and taking responsibility for the items that I stole so that I could attempt to escape prosecution and possible jail time.

8.      On or about August 26, 2004, Candace changed her plea in this matter at my direction and took responsibility for the items.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

Date:

Djuana Dewitt

# EXHIBIT B

Honorable Rya Zobel, US District Judge,

My name is Candace Mateo at the moment a single mother of a beautiful innocent 5 year old daughter named Na'Yah T. Mateo-Jessamy. On May 1, 2006 I pled out to conspiracy to distribute and possession with the intent to distribute cocaine base. Aware of what I had pled out to there was a strong probability of becoming "safety valve" eligible. Unfortunately all motions were denied. This sticks me at a minimum mandatory of 5 yrs. Attorney Bernard made me aware of another opportunity of becoming safety valve eligible. I could cooperate with the government and give you the person that supplied the drugs. Again that gets me nowhere. Three months after being arrested on federal charges, I have been shot at multiple times. Fortunately they were unsuccessful in taking my life. I later learned that they where successful in taking his life so that the man above him would not be exposed. If I knew him, I would give him to you personally. At this point, my only hope is prayer and your call. I have asked the Lord to forgive me for I have learned a valuable lesson. All I can do is ask you to have mercy on my soul. I realize now the mistakes that I have made. I have changed my life for the better. I am a positive role model in my community. I attend church every week. I've also work a job. In the past, I felt I needed to do other things to make ends meet. (My daughter's daycare expenses, rent, utilities etc.) With the support of my family, I see life in a whole different light. My only regret is that I did not learn this early on. (Better late than never)

After being raised without a mother or a father, I told myself that I would be a great mom. And that I would never abandon my child. I have a beautiful innocent intelligent 5yr old, that has been without her father for the past 2yrs (and now her mom is looking at 5yrs) Which leads me to a question for you....I am scheduled to be sentenced on July 25, 2006, I have recently found out that her father is coming home November 2006. I desperately need more time to keep my daughter in the care of either parent. This way she won't have to be without BOTH parents. Whatever happens to me, at least she will still have her father.

This is the most difficult thing for me is the thought of having to leave my child. I know the feeling, and I never wanted my daughter to have to feel like the way I felt growing up I don't blame my parents for the outcome of my life, but, I do feel like it has affected me in more ways than I have realized. I feel very strong about my daughter doing something with her life. She actively in beauty pageants, ballet, gymnastics, creative dance, swimming and cheerleading. She is only 5, going into the 1st grade. I am so proud...she is more than a mother can ask for. I know either way she will be affected by my wrong doing. She is the reason why I have changed my life. Could you please find it in your heart to give me a continuance for the sake of my child?

Sincerely,

Candace D. Mateo

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **Criminal Action No.: 05-30058-MAP** |
| | ) |
| **CANDACE MATEO** | ) |

### CERTIFICATE OF SERVICE

l hereby certify that on July 19, 2006, a true copy of the above document was served by FIRST CLASS MAIL upon Assistant United States Attorney Todd Newhouse, Federal Building and Courthouse, 1550 Main Street, Springfield, MA 01103.

Joseph D. Bernard
The Law Offices of Joseph D. Bernard, P.C.
73 State Street, Suite 301
Springfield, MA 01103
(413) 731-9995
(413) 730-6647 fax

Date:   July 19, 2006                BBO#: 557986